**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY GARDNER | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-4865 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

**QUIÑONES ALEJANDRO, J.**                                 **NOVEMBER 23, 2020**

Plaintiff Anthony Gardner, a prisoner currently incarcerated at SCI-Dallas, filed a pleading labeled "Complaint for Program Fraud Liability & Fraud Upon the Court."  Named as Defendants are the City of Philadelphia, numerous Philadelphia officials, police officers, and district attorneys, as well as defense attorneys.  Gardner seeks to proceed *in forma pauperis* and has submitted a copy of his institutional account statement.  For the following reasons, Gardner's leave to proceed *in forma pauperis* is granted, and his Complaint is dismissed pursuant to Title 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      FACTUAL ALLEGATIONS**

Although Gardner's allegations in the Complaint are lengthy, his claims are not entirely clear, and he does not specify what relief he seeks.  He asserts "[a]fter-discovered fraud" as a basis for the Court's jurisdiction and alleges that the Court may exercise equitable powers to vacate judgments.  (ECF No. 1 at 2.)[1]  He further alleges that the City of Philadelphia deprived the public of honest services when it allowed the Philadelphia District Attorney's Office to advertise a "tough

---

[1]      The Court adopts the pagination supplied by the CM/ECF docketing system.

against crime agenda" to get those charged with crimes to plead guilty in "shotgun prosecutions." (*Id.* at 3.)  Because of a practice of charging different degrees of culpability for similar crimes, he alleges the City targeted Black and Hispanic communities in violation of anti-trust laws.  (*Id.*) While Gardner lists each named Defendant and identifies the Defendant's position with the City government (*id.* at 3-4), many Defendants are never again mentioned in the pleading.  Gardner mentions events that took place in 2012 and 2013 when an attorney for the public defender's office asked a Philadelphia district attorney for *Brady* material and asserts that police officers involved in his criminal case were corrupt.  (*Id.* at 5).  Gardner also asserts that witnesses in his case lied and his attorney was ineffective.  (*Id.*)  *Brady* material was allegedly never surrendered due to "program fraud."  (*Id.* at 6.)

Gardner next discusses petitions he filed pursuant to the Pennsylvania Post-Conviction Relief Act and 28 U.S.C. § 2254 (*id.* at 6-8) and appears to assert a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO") based upon "the pervasion of the cops corruption [that] extended to fraud upon the federal court in cases, 07-360 & 08-2419. . . ."  (*Id.* at 8.)  He also alleges a violation of the Thirteenth Amendment because he "was unlawfully remade into a revenue source under the servitude clauses, and utilized as a political commodity to bolster the census of mining towns in Pennsylvania. . . ."  (*Id.* at 8-9.)  Finally, Gardner alleges an entity called "Big House Productions, Pennsylvania Prison Industries" is a RICO enterprise that "leased a few thousand prisoners to Michigan and Virginia, as a revenue source and potential voting block by the boost of their census. . . ."  (*Id.* at 10.)

A review of public records shows that Gardner entered guilty pleas on March 23, 1992 to charges of Murder and possessing instruments of crime.  *Commonwealth v. Gardner*, CP-51-CR-403831-1990 (C.P. Phila.).  He received a life sentence for the murder conviction.  *Id.*  Public

records confirm that, since that time, he has filed numerous petitions pursuant to the Pennsylvania Post-Conviction Relief Act, most recently on July 30, 2020. The earlier petitions were all denied while the latest petition remains pending.

The first federal case Gardner mentions, *Gardner v. Wynder*, Civil Action 07-360, was a *habeas corpus* petition Gardner filed pursuant to 28 U.S.C. § 2254 on January 26, 2007. Following the issuance of a Report and Recommendation on July 3, 2007 (ECF No. 10), Gardner's objections (ECF No. 11) were overruled and the Report and Recommendation that the *habeas* petition be dismissed as untimely was adopted on July 23, 2007. (ECF No. 12).[2] On May 21, 2008, the United States Court of Appeals for the Third Circuit denied Gardner's request for a certificate of appealability. (ECF No. 17.) A subsequent motion filed by Gardner on May 12, 2010, construed as a motion pursuant to Federal Rule of Civil Procedure 60(b), was denied April 27, 2011 (ECF No. 27) and a motion for reconsideration of that decision filed by Gardner on July 27, 2015 (ECF Nos. 32, 33) was denied on June 30, 2016 (ECF No. 34).

## II.    STANDARD OF REVIEW

Gardner leave to proceed *in forma pauperis* is granted because it appears that he is incapable of paying the fees to commence this civil action.[3] Thus, under these circumstances, 28

---

[2]    The second federal case Gardner mentions, *Gardner v. Wynder*, Civil Action 08-2419, was opened as a new civil action when Gardner filed a motion pursuant to Rule 60(b) directed to the Court's July 23, 2007 dismissal order in Civil Action 07-360. An Order filed on July 16, 2008 in the case (ECF No. 2) referred the motion for a report and recommendation and noted it was related to Civil Action 07-360. An August 28, 2008 Report and Recommendation recommended that the motion be denied (ECF No. 4), and the Court filed an Order on December 17, 2008 (ECF No. 9) denying the motion and closing the case. Thereafter, Gardner filed a Rule 60(b) motion directed to the denial of his first Rule 60(b) motion in Civil Action 08-2419 (ECF No. 10) and filed the same motion from 07-360 in 08-2419. Each of those motions was also denied.

[3]    As Gardner is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the court to dismiss a complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Gardner is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

The Court interprets Gardner's Complaint as asserting RICO claims or fraud claims in addition to a claim under the Thirteenth Amendment. The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter, [which prohibits racketeering activity,] may sue therefore in any appropriate United States district court. . . ." 18 U.S.C. § 1964(c). "In order to plead a violation of § 1962(c), [a plaintiff] must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010) (per curiam). "The RICO statute defines a 'pattern' of racketeering activity as requiring 'at least two acts of racketeering activity' within a ten year period." *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3d Cir. 1995) (*en banc*) (quoting 18 U.S.C. § 1961(5) ). "[T]o establish a 'pattern' of predicate acts, [a plaintiff] must allege that the acts are related, and amount to or pose a threat of continued criminal activity." *Kolar*, 361 F. App'x at 363. RICO provides for money damages.

Here, Gardner indicates that the predicate acts upon which he relies are "honest services" frauds committed by unspecified officials. Those officials allegedly permitted the Philadelphia

District Attorney's Office to implement (1) a "tough against crime agenda" to get individuals – presumably those like Gardner who have been charged with crimes – to plead guilty and (2) a practice of charging different degrees of culpability for similar crimes that targeted Black and Hispanic communities in violation of anti-trust laws.  While Gardner has not specified the type of relief he seeks, it appears that he seeks to use these alleged violations as a basis for attacking his criminal conviction or to obtain damages as a result of actions that led to his being convicted.

To the extent Gardner's allegations attack *his* criminal conviction for the purpose of seeking release from custody, his claim cannot proceed.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of *habeas corpus*."  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Accordingly, Gardner may not use civil RICO and fraud claims to seek release from custody.

To the extent that Garden seeks money damages, the claims – alleging improprieties in his prosecution – would also be barred since success on those claims would call into question the validity of Gardner's conviction or sentence.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that where a claim for money damages "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is pursued, a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*[.]" (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)

— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck* 512 U.S. at 487.

Notably, "*Heck*'s bar [*i.e.*, the prohibition on filing claims that would necessarily imply the invalidity of intact convictions] cannot be circumvented by substituting a supposed RICO action for . . . [constitutional] claims ineffectually designed for the same purpose." *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008); *Franco v. City & Cty. of San Francisco*, Civ. A. No. 10-04768, 2012 WL 3010953, at \*3 (N.D. Cal. July 23, 2012) ("The rationale of *Heck* applies to RICO and conspiracy claims."). Moreover, the United States Supreme Court has held that *Heck* applies where the claim asserts a "fabricated-evidence challenge to criminal proceedings" until the proceeding ends in the defendant's favor or a resulting conviction is invalidated. *See also Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("*Brady* claims have ranked within the traditional core of *habeas corpus* and outside the province of § 1983."); *Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (*per curiam*) ("Nash's malicious-prosecution and speedy-trial claims — which challenge his post-arraignment detainment — are barred by the favorable-termination rule of [*Heck*].").

Accordingly, Gardner's claims, other than the allegation of a Thirteenth Amendment violation, must be dismissed, without prejudice. Gardner may *only* reassert those claims in a new civil action if his convictions are ever reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*.

Gardner's allegation of a Thirteenth Amendment violation is not be barred by *Heck* since that allegation does not appear to call into question the validity of his conviction.  Rather, he appears to allege the prison system has forced him to work and has moved him to various locations to work.

The Thirteenth Amendment of the United States Constitution prohibits involuntary servitude, except as punishment for a crime for which a party has been duly convicted.  U.S. Const. amend. XIII.; *United States v. Kozminski*, 487 U.S. 931, 943 (1987).  In the prisoner context, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be compelled to work.  *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (nonprecedential) (inmate's Thirteenth Amendment and due process rights not violated when he was required to work for payment below minimum wage); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) ("A prisoner has no basis for asserting a violation of due process simply because he is made or allowed to work for low pay as punishment for a crime of which he was lawfully convicted."); *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay); *Murray v. Mississippi Dep't Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990) (same); *Johnson v. Townsend*, 314 F. App'x 436, 440 (3d Cir. 2008) (nonprecedential) (inmates do not "have a constitutional right to compensation").  Accordingly, as the public record demonstrates that Gardner is a lawfully held convict, he has no claim under the Thirteenth Amendment based on involuntary servitude.  Because any attempt to amend this claim would be futile, this claim is dismissed, with prejudice.  *See Grayson v. Mayview State Hosp.*, 293

F.3d 103, 108, 110 (3d Cir. 2002) (holding that courts should dismiss complaints under the PLRA

with leave to amend "unless amendment would be inequitable or futile").

     An appropriate Order follows.


          **BY THE COURT:**


          /s/ *Nitza I. Quiñones Alejandro*
          **NITZA I. QUIÑONES ALEJANDRO**
          *Judge, United States District Court*